William CABLE, M.D., Plaintiff,

v.

DEPARTMENT OF DEVELOPMENTAL
SERVICES OF THE STATE OF
CALIFORNIA, et al., Defendant.

No. SA CV 96–1190–GLT[cc].

United States District Court,
C.D. California,
Southern Division.

July 15, 1997.

Francis X. Hardiman, Hardiman & Cahill, Santa Ana, California, for Plaintiff.

Thomas Scheerer, Deputy Attorney General, Los Angeles, California, for Defendants.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

TAYLOR, District Judge.

The motion to dismiss is granted in part and denied in part. Among other things, the court holds (1) exhaustion of administrative remedies is not required before bringing an ADA Title V retaliation claim for objecting to unlawful practices under ADA Title II, and (2) a California public entity's failure to provide services to disabled persons in the "most integrated setting appropriate" is actionable under ADA Title II.

### I. BACKGROUND

It is the stated legislative policy of the State of California to "mainstream" developmentally disabled persons—that is, transition them from hospitals into "natural community settings." *See* Cal. Welf. & Inst. § 4500 *et seq.* Plaintiff William Cable, M.D., the Chief of the Medical Staff at Fairview Developmental Center, contends the community placement program is being administered improperly, and he has been retaliated against because of his protests.[1]

Plaintiff contends Defendants Department of Developmental Services and Fairview have chosen the most severely developmentally disabled persons for community placement because they either are unable to object to the placement or do not have parents or guardians to object on their behalf. He further contends many of the community facili-

1. The state's community placement program is heavily influenced by the 1994 settlement of a lawsuit by institutional patients claiming to be eligible for community placement. *Coffelt v. Department of Developmental Services,* No. 916401 (S.F.Sup.Ct.1991). Under the *Coffelt* settlement, the State Department of Developmental Services was required to reduce the population of persons residing in developmental centers by one third (about 2000 people) within five years.

ties where Fairview patients have been placed are unable to adequately care for the needs of the severely developmentally disabled, and cites recent studies finding high morbidity and mortality rates after community placement.

According to Plaintiff, after he objected to the planned community placement of some of his patients, he was subjected to various forms of retaliation. Particularly, he alleges he received official reprimands and a 10–day suspension without pay, was removed from the adult care ward and assigned to a pediatric care ward, and was removed from the Behavior Management Committee and Pharmacy and Therapeutics Committee. Plaintiff claims his office was moved to an asbestos contaminated hallway and other punitive action was taken in additional retaliation for voicing his concerns.

Plaintiff sues the state's Department of Developmental Services, Fairview Developmental Center, and others for violations against him of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, based on the claimed retaliation.[2] Defendants move to dismiss, contending that the claim is barred under the doctrine of res judicata and that Plaintiff fails to state an ADA claim.

## II. *DISCUSSION*

### A. *Res Judicata*

Plaintiff bases his claims partly on two adverse actions taken by the State Personnel Board under California Government Code sections 19570–88. Plaintiff was served with a Notice of Adverse Action charging him with inexcusable neglect of duty, discourteous treatment of the public and other failures of good behavior. Plaintiff received another Notice of Adverse Action charging him with dishonesty, inexcusable neglect of duty and using confidential information for private gain. After the second notice Plaintiff was suspended for ten days without pay. Plaintiff alleges each adverse action was taken in

retaliation for speaking out against patient placement decisions.

Defendants contend each of these adverse actions is res judicata. Relying on *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir.1994), Defendants argue Plaintiff's failure to appeal either action renders each a final judgment and beyond review by this Court. The Court disagrees.

■ For a prior administrative or judicial decision to have preclusive effect, the judgment must have been rendered in proceedings meeting due process standards. The party against whom the judgment was rendered must have had a "full and fair opportunity" to litigate its claims or defenses before an impartial tribunal. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–82, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982); *Miller*, 39 F.3d at 1033 (holding administrative proceedings may be given preclusive effect only when an agency acts in a judicial capacity and resolves issues of fact "which the parties have had an adequate opportunity to litigate" (quoting *Plaine v. McCabe*, 797 F.2d 713, 721 (9th Cir.1986))).

■ Neither of the Notices of Adverse Action issued by the State Personnel Board is res judicata for purposes of this lawsuit. The initial proceedings by the Personnel Board did not provide Plaintiff with an opportunity to litigate the issues. There was no presentation of witnesses or evidence. Plaintiff could have contested the adverse actions by proceeding to a full evidentiary hearing, but he chose not to do so and filed this action instead. Had Plaintiff proceeded to the next administrative step of a contested hearing, it would likely have had res judicata effect. *Miller*, 39 F.3d at 1033. However, by choosing not to proceed administratively in a contested hearing and filing suit instead, Plaintiff is not bound by res judicata. *Id.* at 1034 n. 3.

---

2. Plaintiff's complaint asserts other claims not relevant to the issue decided here. Plaintiff has also brought a separate lawsuit as guardian ad litem on behalf of a named developmentally disabled person and others similarly situated claim-

ing violations of their rights arising from administration of the community placement program. *Richard S. v. Department of Developmental Services*, No. SA CV 97–219–GLT (C.D. Cal. Mar 20, 1997).

### B. *Americans With Disabilities Act*

In Counts One, Two and Three of his Second Amended Complaint, Plaintiff alleges claims for unlawful retaliation under the ADA. Plaintiff alleges he was retaliated against for speaking out against practices he contends are unlawful under the ADA.

■ Under Title V of the ADA, it is unlawful to retaliate against an individual because "such individual has opposed any act or practice made unlawful" under the ADA. *See* 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation, an employee must show "(1) that he or she engaged in activity protected by the statute; (2) that the employer ... engaged in conduct having an adverse impact on the plaintiff; and (3) that the adverse action was causally related to the plaintiff's exercise of protected rights." *Henry v. Guest Services, Inc.,* 902 F.Supp. 245, 251 (D.D.C.1995) (quoting *Passer v. American Chemical Society,* 935 F.2d 322, 331 (D.C.Cir.1991)).

Defendants move to dismiss Plaintiff's ADA claims on several grounds. First, they claim Plaintiff failed to exhaust his administrative remedies. Second, they claim Plaintiff has not alleged he engaged in conduct protected by the ADA. Third, Defendants claim Plaintiff did not suffer an adverse action sufficient to state a retaliation claim. Last, Defendants contend there can be no individual liability under the ADA.

### 1. *Exhaustion of Administrative Remedies*

■ Defendants claim Plaintiff cannot pursue his retaliation claims under Title V of the ADA because he has failed to exhaust his administrative remedies. According to Defendants, "[c]ourts have repeatedly held that persons claiming discriminatory employment practices in violation of Title I of the ADA must exhaust their administrative remedies." Motion to Dismiss at 12. Defendants encourage the Court to extend this exhaustion requirement to Plaintiff's claim he suffered retaliation for objecting to practices made unlawful under Title II of the ADA.

In enacting Title V, Congress created a set of remedies and procedures which depends on the title of the ADA underlying the retaliation claim. Title V provides, "the remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, *with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.*" 42 U.S.C. § 12203(c) (emphasis added). Thus, from the language of the statute, it appears Congress intended the enforcement remedies and procedures established for Title II violations, *see* 42 U.S.C. § 12133, to be applied to persons who have suffered retaliation for objecting to acts or practices which violate Title II.[3]

Courts have consistently held there is no exhaustion requirement under Title II of the ADA. *See, e.g., Wagner v. Texas A & M University,* 939 F.Supp. 1297, 1309 (S.D.Tex. 1996); *Roe v. County Comm'n of Monongalia County,* 926 F.Supp. 74, 77 (N.D.W.Va. 1996). *See also Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990) (holding a plaintiff need not exhaust administrative remedies before filing suit under the Section 504 of the Rehabilitation Act). Here, Plaintiff's Title V claims rely on acts and practices Plaintiff alleges were unlawful under Title II of the ADA. Thus, Plaintiff was not required to exhaust administrative remedies before filing this action.

### 2. *Protected Activity*

Defendants contend the alleged conduct Plaintiff has opposed does not "fairly fall within the protection of" the ADA, therefore, Plaintiff cannot state a claim for retaliation. *See Learned v. City of Bellevue,* 860 F.2d 928, 932 (9th Cir.1988) (holding in the context

---

**3.** This interpretation of 42 U.S.C. § 12203(c) is supported by the ADA's legislative history. After amending section 12203(c) to include the language, "with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively," the Committee Report commented:

[§ 12203(c)] provides the same remedies and procedures for victims of retaliation and coercion as in the underlying title. For example, an individual who was retaliated against in an employment discrimination complaint would have the same remedies and procedures available under [Title I] as an individual alleging employment discrimination.

H.R.Rep. No. 101–485, part III at 72.

of Title VII, "the opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation."); *Henry v. Guest Services, Inc.*, 902 F.Supp. 245, 251 (D.D.C.1995) (holding that an employee must show "that he or she engaged in activity protected by the statute" to establish a prima facie case of retaliation). For Plaintiff to have a Title V claim, he must have suffered retaliation for opposing an act or practice made unlawful under the ADA. 42 U.S.C. § 12203(a).

Plaintiff alleges he opposed practices made unlawful under Title II of the ADA: (1) the placement of Fairview patients in the community without regard for their individual needs, and (2) the placement of patients unable to object to the placement decision due to a severe disability or the lack of a conservator or interested parents. Defendants contend neither of these alleged practices violates the ADA, hence Plaintiff's protests were not ADA protected activity.

a. *Failure to Provide Appropriate Services*

■ Plaintiff alleges he has opposed Defendants' community placement program because Defendants fail to adequately account for the individual needs of patients in making community placement decisions. This practice, he contends, is unlawful under Title II of the ADA. Defendants claim such a practice, if true, is not actionable under the ADA. According to Defendants, the ADA serves the purpose of preventing discrimination only.

Title II of the ADA provides:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Although Title II expressly prohibits discrimination against the disabled, Congress did not intend to condition the protection of the ADA upon a finding of discrimination. *Helen L. v. DiDario*, 46 F.3d 325, 334 (3d Cir.1995) (addressing legislative history and administrative coordination regulations of the ADA). A state agency's failure to provide an individual services in the "most integrated setting appropriate" to the individual's needs without a proper justification violates the ADA. *See id.* at 331–336.

In *Helen L.*, the plaintiffs alleged the Pennsylvania Department of Public Welfare was violating Title II of the ADA by requiring them to receive care in a segregated setting rather than through the state's attendant care, or community based, program. In concluding the plaintiffs were entitled to treatment through the state's attendant care program, the *Helen L.* court held the state was obligated to provide services in the "most integrated setting appropriate" to an individual's needs. *Id.* at 332.

*Helen L.* relied on the basic principle that a court should accord considerable weight to an executive department's construction of a statutory scheme it is entrusted to administer. *See* 46 F.3d at 332 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984)). Moreover, the court noted that, when Congress approves of an administrative interpretation of a statute, the interpretation acquires the force of law. *See id.* (citing *United States v. Board of Comm'rs of Sheffield, Alabama*, 435 U.S. 110, 134, 98 S.Ct. 965, 980–81, 55 L.Ed.2d 148 (1978)). The court then held, after a review of the legislative and regulatory history of the ADA, 28 C.F.R. section 35.130(d) has the force of law when it states, "A public entity shall administer services, programs, and activities *in the most integrated setting appropriate to the needs of qualified individuals* with disabilities." *Id.* (emphasis added).

■ Defendants argue *Helen L.* does not support Plaintiff's position because Plaintiff is making the opposite contention as the plaintiffs in *Helen L., i.e.*, that Defendants are violating Title II by releasing individuals into the community from segregated care settings as opposed to retaining them in an institutional setting. The Court disagrees and holds Title II requires public entities to administer services in the "most integrated setting appropriate" regardless of whether that setting is an institution or a community home.

Although "integration is fundamental to the purposes of the ADA," 28 C.F.R. Part 35, App. A. § 35.130, integration is not a goal to be achieved at any cost. The ADA does not protect the disabled merely from discrimination or unjustifiable segregation. As noted in the Code of Federal Regulations, the ADA further requires services be provided in "the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

■ Plaintiff alleges he objected to the manner in which his patients were released into community treatment programs because it "impede[d] appropriate integration of the qualified disabled into the least restrictive environment." SAC ¶¶ 105, 114. Because the ADA requires services be provided in the "most integrated setting appropriate" to a patient's needs, Plaintiff's opposition to this practice constituted protected activity under Title V of the ADA. *See* 42 U.S.C. § 12203.

b. *Transfer of Fairview Clients*

■ Plaintiff contends Defendants have actively "discriminated" against severely disabled Fairview patients without conservators or interested parents in order to accelerate compliance with the *Coffelt* settlement agreement. Plaintiff alleges Defendants have retaliated against him for objecting to this discrimination. Defendants argue Plaintiff has not objected to ADA-prohibited activity, *i.e.*, defendants contend the ADA does not prohibit discrimination on the basis of severity of disability. The Court concludes Plaintiff's allegations of discrimination are sufficient to state a claim under Title V of the ADA.

Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be . . . denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Further, the Department of Justice has promulgated the following regulation applicable to recipients of federal aid:

A public entity, in providing any aid, benefit, or service, may not . . . Provide different or separate aids, benefits, or services to individuals with disabilities than is provided to others, unless such action is nec-

essary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others.

28 C.F.R. § 35.130(b)(1)(iv). At least one court has interpreted the above to "prohibit discrimination on the basis of the severity of a person's disability." *See, e.g., Messier v. Southbury Training School*, 916 F.Supp. 133, 141 (D.Conn.1996). The Court concludes this is an accurate interpretation of the ADA.

As observed by the Ninth Circuit, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir.1996) (quoting 42 U.S.C. § 12101(b)(1)). To conclude discrimination between the disabled and non-disabled is prohibited by the ADA, yet discrimination among disabled individuals is not, would conflict with the purposes of the ADA. The effect of either type of discrimination is the same. A decision to provide or withhold services based on a characteristic Congress has deemed unlawful violates Title II of the ADA.

Here, Plaintiff alleges Defendants have improperly chosen certain patients for community placement because they are more disabled than others or because they do not have interested parents or conservators. The Court concludes this may constitute discrimination on the basis of disability within the meaning of Title II. Accordingly, retaliation for objection to this practice is actionable under Title V of the ADA.

3. *Adverse Employment Decision*

■ For a plaintiff to allege a claim for unlawful retaliation, he must allege he was subjected to an "adverse employment decision." *See Collins v. Illinois*, 830 F.2d 692, 702–04 (7th Cir.1987). An adverse decision is one that causes "tangible harm, such as loss of salary, benefits, or position." *Wu v. Thomas*, 996 F.2d 271, 273 (11th Cir.1993). Defendants claim Plaintiff has not alleged he has suffered a tangible harm sufficient to state a claim under Title V of the ADA.

The Second Amended Complaint alleges Plaintiff suffered a ten-day suspension with-

out pay. This factual allegation alone is sufficient to constitute an adverse employment decision. He also contends he has been excluded from participation in *Coffelt* exit conferences, removed from various committees, and generally impeded in the performance of his administrative and medical duties. In this context, the Court concludes Plaintiff has alleged a "tangible harm" sufficient to constitute retaliation for purposes of the ADA.

### 4. *Individual Liability*

■ Defendants argue the Court should dismiss Plaintiff's ADA claims against the individual defendants because there can be no individual liability under the ADA. In support of their position, Defendants cite *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583 (9th Cir.1993) (holding individual employees cannot be held liable under Title VII) and *Gallo v. Board of Regents*, 916 F.Supp. 1005 (S.D.Cal.1995) (dismissing ADA claims against an individual). The Court concludes these authorities are persuasive, and holds individuals are not subject to liability under Title V of the ADA.

Title V prohibits "persons" from retaliating against individuals for opposing acts made unlawful by the ADA. 42 U.S.C. § 12203(a). In defining the term "person," the ADA adopts the meaning given the term in 42 U.S.C. § 2000e. *See* 42 U.S.C. § 12111(7). Although section 2000e(a) defines "person" as "one or more individuals," courts in the Ninth Circuit have held individuals cannot be held liable for damages under section 2000e. *See Miller*, 991 F.2d at 587; *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir.1982). Given this judicial limitation on the scope of section 2000e liability, the scope of liability under the ADA is by extension similarly limited. *See also EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir.1995)(holding "that individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA"). Accordingly, the Court holds individuals cannot be held liable under Title V of the ADA.