**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANK D. SHIFLETT,
Plaintiff-Appellant,

v.

GE FANUC AUTOMATION
CORPORATION; GE FANUC

No. 97-1687

AUTOMATION NORTH AMERICA,
INCORPORATED; DONALD BORWHAT;
LAWRENCE PEARSON; THOMAS
MCGINNIS; KEITH CHAMBERS; SHERON
LAMB,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CA-95-73-C)

Argued: March 5, 1998

Decided: June 19, 1998

Before MURNAGHAN, Circuit Judge, KEELEY, United States
District Judge for the Northern District of West Virginia, sitting by
designation, and MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Hope B. Eastman, PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG & COOPER, CHARTERED, Bethesda, Maryland, for

Appellant. Robert Craig Wood, MCQUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Charlottesville, Virginia, for Appellees. **ON BRIEF:** David M. Rothenstein, Daniel S. Koch, PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG & COOPER, CHARTERED, Bethesda, Maryland, for Appellant. James M. Johnson, MCQUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Charlottesville, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Frank D. Shiflett appeals the district court's grant of summary judgment in favor of GE Fanuc Automation Corporation, ("Fanuc") and several individual employees of Fanuc, on his claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). He argues that the district court erred in finding (1) that the defendants did not fail to reasonably accommodate his disability; (2) that the workplace was not intolerably hostile and abusive, and did not constitute disability based harassment under the ADA; (3) that there were no issues of material fact as to the misconduct for which he was terminated; (4) that the reason for the termination was not pretextual and was not premised on his disability; and (5) that individual employees are not liable for violations of the ADA.

We agree that there are no genuine issues of material fact and affirm the judgment of the district court.

I.

Beginning in 1980 and continuing until his termination in 1994, Shiflett was employed at Fanuc as a printer and, later, as a computer operator. He has suffered from a severe sensorineural hearing loss in

both ears since childhood, and wore hearing aids during the entire period of his employment. Fanuc knew of this disability since at least 1984, when Shiflett's performance review included the statement that "Frankie is very willing to assist all users in solving their problems, though he is somewhat less effective with his hearing impairment." Shiflett, however, did not self-identify as having a disability until March 12, 1991.

In his work in the print shop and as a computer operator, Shiflett worked for several years without problems. He received good performance evaluations, and had limited interaction with others. Then, in 1988, he was moved from the first shift to the second shift to learn a different system, a move he believed would be temporary. Because of training needs and the needs of the business, however, all of the first shift positions were filled, leaving no openings except in Product Development, an opportunity that Shiflett declined. The employment relationship deteriorated after that, with Shiflett believing that Fanuc had denied him the first shift position because of his hearing loss. He also believed that he had not been given the option of using the company's appeals process.

On April 27, 1990, Fanuc warned Shiflett about actions described as disorderly conduct and insubordination. He was told that any recurrence of the use of demeaning language, yelling and physically intimidating a supervisor, would result in immediate suspension, even discharge. Shortly afterward, Shiflett received a performance evaluation which was satisfactory, but later that summer he was suspended for a day for inappropriate behavior with female colleagues and several incidents of working unapproved overtime. He was warned that recurrence of either problem would result in termination.

In the summer of 1992, Shiflett was given an unsatisfactory performance rating, and told that he needed to correct his attitude, behavior, professionalism, and willingness to follow directions. He was put on 90-day performance reviews and reassigned temporarily to first shift.

During all of this time, Shiflett was working in the computer room, which housed four printers and was very noisy. These conditions made it difficult for him to hear the telephone ring and to answer users' questions over the telephone. In spite of this, by January, 1993,

he had improved his performance to satisfactory in many areas; by April, 1993, he had improved to satisfactory in all areas.

On March 1, 1994, however, Shiflett approached his supervisor, Sheron Lamb, about a problem with his hourly schedule and pay. Ms. Lamb states that Shiflett's behavior on this occasion was "abusive, intimidating, threatening and generally insubordinate." Consequently, he was suspended on March 2, and, after investigation, terminated on March 8, 1994.

Shiflett then brought suit against Fanuc and several of its individual employees under the Americans with Disabilities Act as well as several state causes of action. His complaint sought equitable and monetary relief to redress unlawful harassment and other employment discrimination in the workplace based on his disability. Specifically, Shiflett alleged that the defendants (1) subjected him to a hostile environment on the basis of his disability; (2) failed to make reasonable accommodation for his disability; (3) adversely limited and classified him on the basis of his disability; and (4) terminated his employment for alleged "misconduct" that resulted directly from its failure to accommodate his disability in violation of the ADA.

Early on, the district court affirmed in part the Magistrate Judge's Recommended Disposition, dismissing certain of the state law claims, including wrongful termination, intentional infliction of emotional distress and breach of contract, and dismissing Shiflett's ADA claims against the individual defendants. Shiflett then pursued his remaining claims under the ADA against the corporate defendant, and also litigated his claim for negligent infliction of emotional distress against all defendants.

Following discovery, the district court affirmed the Magistrate Judge's Recommended Disposition and granted summary judgment on the remaining claims.

II.

Summary judgment should be granted if there are no genuine disputes of material fact and the moving party is entitled to judgment as

4

a matter of law. Fed.R.Civ.P. 56. This Court reviews the district court's grant of summary judgment de novo, drawing reasonable inferences and taking all evidence in the light most favorable to Shiflett. Porter v. U.S. Alumoweld Co., 125 F.3d 243 (4th Cir. 1997). The party bearing the burden of proof on a specific issue must provide "significant probative evidence tending to support the complaint" or provide "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

A. Failure to Accommodate

Shiflett asserts that he sought accommodations for his disability, including a louder telephone ringer and adequate telephone amplifier for the printer room. He also requested that each person should get his attention before speaking, and speak slowly and that each person should tell him when he was speaking too loudly. He acknowledges that an amplifier was provided, although he now claims it was not sufficient, but he asserts that none of the other accommodations were provided.

In his deposition, Shiflett testified that, when he first was hired at Fanuc, he told individuals named Thurston and Lotts that they would need to get his attention when they spoke to him, but since he worked "pretty much" by himself on the press and bindery, there was no problem. When he was moved to the computer room, he requested a better telephone amplifier than the one already available. The old one was cleaned, and Shiflett did not complain again until the litigation.

Indeed, in his self-identification form, in which he asked to be considered under the affirmative action program for the handicapped, he answered the request for suggestions for accommodations as follows: "I use a telephone with an amplifier on it to help understand calls better, especially in a noisy area such as the computer area. I wear a hearing aid to correct my hearing loss." In his affidavit supporting his EEOC complaint, he stated that he made no other requests for accommodation, and he confirmed that fact in his deposition.

5

Shiflett did not self-identify as disabled until March, 1991. Prior to that date, the company knew that he wore a hearing aid, but had no duty to inquire further after Shiflett had declined to go to the Health Center to participate in the interactive process of identifying reasonable accommodations. Further inquiry would have come dangerously close to violating the ADA, which directs that an employer "shall not make inquiries of an employee as to whether ... an employee is an individual with a disability, unless such examination or inquiry is shown to be job related and consistent with business necessity," 42 U.S.C. § 12112(d)(4)(a).

Where the employee is performing the job satisfactorily, as was Shiflett during most of his employment, and where the employee will not acknowledge the need for or request an accommodation, or let the employer know that an accommodation is insufficient, the employer cannot be required to guess or read the employee's mind. As the district court noted, "Defendants should not suffer ADA liability because plaintiff was unduly reticent in communicating his problem, however `natural' his timidity might be." This record reflects that Shiflett was neither reticent nor timid about other issues with his employer and certainly knew how to complain. The employer is entitled to notice before becoming liable for failure to accommodate. See 29 C.F.R. App. § 16309 ("[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.").

B. Harassment and Hostile Workplace

To make out a claim of disability harassment, Shiflett must show that the acts of Fanuc's employees were severe and pervasive enough to create a hostile working environment, and that some basis exists to impute liability to the employer. See Amirmokri v. Baltimore Gas and Electric Co., 60 F.3d 1126, 1130 (4th Cir. 1995) (discussing national origin harassment); Paroline v. Unisys Corp., 879 F.2d 100, 105 (4th Cir. 1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir. 1990) (en banc) (sexual harassment); Dwyer v. Smith, 867 F.2d 184, 187 (4th Cir. 1989) (sexual harassment). Although the question whether harassment is sufficiently severe or pervasive is quintessentially a question of fact, Beardsley v. Webb, 30 F.3d 524, 530 (4th Cir. 1994), where the conduct is neither sufficiently severe nor pervasive to create an environment that a reasonable person would

6

find hostile or abusive, summary judgment is appropriate. <u>See</u> <u>Hopkins v. Baltimore Gas and Electric Co.</u>, 77 F.3d 745, 753 (4th Cir. 1996).

Shiflett complains that Sheron Lamb, his immediate supervisor in the computer room, often made fun of his hearing loss by saying: "You're not paying attention to me; you didn't hear what I said;" "Pay attention;" "Didn't you hear the phone ring?" "Is your hearing aid turned up?" "Do you need a new battery?""Why do you want to go to meetings, you can't hear anyway?" He asserts Lamb made these statements in a mean way, and accompanied them by stomping her feet and making ugly faces.

The record is clear that Shiflett was having difficulty with his job during the period after he was denied a return to first shift, and would not listen to instruction, would not take the time to understand, would not act as a team member and would not trouble shoot with the users. All of these were tasks he was capable of doing, and Ms. Lamb's comments were those of a supervisor trying to work with a recalcitrant employee. To be sure, some remarks may have been insensitive, particularly the remark about the meetings, but they were not so pervasive or severe and mean that a reasonable person would find the workplace abusive. In fact, Shiflett could not remember a single incident of harassment after March, 1993, when his performance evaluation had improved. Moreover, similar remarks had to be directed at Shiflett by the attorney and the court reporter during his deposition, when he was not listening or waiting for the whole question, or was talking too fast to be understood. At best, as the district court pointed out, the plaintiff established "conduct that sporadically wounds or offends" but does not affect performance, citing <u>Henry v. Guest Services, Inc.</u>, 902 F.Supp. 245, 252 n.9 (D.D.C. 1995), quoting <u>DeAngelis v. El Paso Mun. Police Officers Ass'n</u>, 51 F.3d 591, 593 (5th Cir.), <u>cert. denied</u>, 516 U.S. 974 (1995).

C. <u>Termination</u>

The plaintiff argues that the district court erred in applying the proof scheme of <u>Ennis v. National Assoc. of Business and Educational Radio, Inc.</u>, 53 F.3d 55, 58 (4th Cir. 1995), which is patterned on the burden shifting framework established by <u>McDonnell Douglas</u>

7

Corp. v. Green, 411 U.S. 792, 802 (1973). He insists that the Court should utilize the direct proof paradigm of Tyndall v. National Education Centers, 31 F.3d 209, 212 (4th Cir. 1995), under which the plaintiff must establish 1) that he has a disability; 2) that he was qualified for the job; and 3) that his termination constituted discrimination based on disability.

The plaintiff in Tyndall had been fired for missing too much work due to her own disability and the disability of her son. Thus, the reason for the discharge was directly related to the disability. Here, however, as in Ennis, the employer has offered a reason for the termination unrelated to the disability, i.e., misconduct. Ennis held that

> in a typical discharge case brought under the ADA, a plaintiff must prove by a preponderance of the evidence that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

53 F.3d at 58.

The district court found that Shiflett is in the protected class, as a disabled person under the ADA, and that he was discharged, thus establishing the first two prongs of the Ennis test. The district court then held that Shiflett was not meeting the reasonable expectations of the employer in the performance of his job, because of the documented incidents of misconduct. Except for the March 1, 1994 incident, however, these incidents had all occurred in 1990 and 1991, after which Shiflett was given satisfactory performance ratings, and he had been disciplined or warned for these incidents, but not discharged. Nevertheless, this Court affirms the district court's grant of summary judgment because the plaintiff cannot establish the fourth prong of Ennis, that is, that his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

Shiflett was discharged because, on March 1, 1994, he went into his supervisor's office, upset because she would not approve one hour

8

of overtime pay. While there, he loudly requested that she explain her denial, would not allow her to speak and approached her too closely. Fanuc suspended Shiflett the next day, and its Manager of Human Resources, Marybeth Sullivan-Rose, started an investigation.

The actual details of the confrontation are disputed, a classic "he said . . . she said" situation. Ms. Sullivan-Rose reported that the supervisor, Ms. Lamb, described Shiflett as "yelling, screaming, very irrational, very angry, over talking," positioning himself to block her only exit, pointing his finger at her, coming too close to her, not permitting her to speak, and putting her in fear of being hit. According to other witnesses, she was crying after the incident, and crying and upset the next day. Shiflett denied that he acted like this and argues that, if he was loud and pointed his finger, it was a result of his deafness, in that he cannot hear his own voice to modulate it and uses his hands for language.

An employer is free to discharge a disabled person for misconduct, even if the misconduct is related to his disability. Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 n.3 (4th Cir. 1997); Little v. F.B.I., 1 F.3d 255 (4th Cir. 1993). Shiflett had been given several opportunities to correct inappropriate and insubordinate behavior, and had been warned that further similar conduct would result in termination. The actual decision to terminate him for the March 1 conduct was preceded by a two week investigation, including interviews of numerous witnesses, by a human resources person with little prior knowledge of Shiflett, and who was not in his operational line of authority. In addition, there is no evidence that Sheron Lamb would have concocted the story or exaggerated it, given the fact that she protected and assisted Shiflett during 1991-92, when she had worked with him to bring his performance back to his previously high levels.

In Ennis, the Fourth Circuit held that the plaintiff must present affirmative evidence that disability was a determining factor in the employer's decision. 53 F.3d at 59. Shiflett has presented only speculation, and has not met his burden of rebutting the employer's stated, legitimate reason for termination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

9

D. Individual Liability

Shiflett also sued Donald Borwhat, Lawrence Pearson, Thomas McGinnis, Keith Chambers and Sheron Lamb, each of whom was in a supervisory position or involved in employee relations. He argues that, acting within the scope of their employment, they violated the ADA. The district court dismissed these individuals, declining to extend ADA liability to individuals, citing Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996), and U.S.E.E.O.C. v. AIC Security Investigations Ltd., 55 F.3d 1276, 1279-82 (7th Cir. 1995). Both of these cases held that the ADA only provides for employer liability. Because we have found that no violation of the ADA occurred, the individual defendants cannot be liable, and dismissal was appropriate.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

10