**Douglas Edward HAHN, by and through his co-guardians Judith BARTA and Barbara Axline, Plaintiff,**

v.

**LINN COUNTY, IA, a local government entity; Lu Barron, Lumir Dostal, Jr., and James Houser, in their official capacities as members of the Linn County Board of Supervisors; and Discovery Living, Inc., Defendants.**

No. C99–19.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Feb. 2, 2001.

Sondra B. Kaska, Iowa City, IA, for plaintiff.

Jeffrey L. Clark, Assist. County Atty., Cedar Rapids, IA, for Linn County, Linn County Bd. of Supervisors, defendants.

Kelly R. Baier, Bradley and Riley, P.C., Cedar Rapids, IA, for Discovery Living, defendant.

**MEMORANDUM OPINION AND OR-DER REGARDING DEFEN-DANTS' MOTIONS FOR SUM-MARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1040
 A. The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1040
 B. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1040
 C. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1041

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1042
 A. Standards for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 1042
 B. Federal Disability Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1043
 1. Title II claims against Linn County . . . . . . . . . . . . . . . . . . . . . 1044
 a. Benefit denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1045
 b. Meaningful access . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1048
 c. Discrimination "by reason of his disability" . . . . . . . . . . . . . . 1049
 d. "Reasonable modification" . . . . . . . . . . . . . . . . . . . . . . . . . 1051
 e. Significance of complying with MHDD . . . . . . . . . . . . . . . . . 1053
 2. Title III claims against Discovery Living . . . . . . . . . . . . . . . . . 1053
 a. Eligibility criteria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1055
 b. Reasonable modification . . . . . . . . . . . . . . . . . . . . . . . . . . 1056
 c. Auxiliary aids . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1057
 d. Equal access to services . . . . . . . . . . . . . . . . . . . . . . . . . . 1058
 3. Relationship between Linn County and Discovery Living . . . . . . . . 1059
 C. State Disability Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1059

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1060

The summary judgment motions filed by each defendant in this disability discrimination case raise the following novel question: Whether the defendants' refusal to provide facilitated communication, an alternative form of communication, to an autistic individual violates both federal and state disability discrimination laws?

## I. INTRODUCTION

Plaintiffs Judith Barta and Barbara Axline, as co-legal guardians of their brother Douglas Edward Hahn ("Mr. Hahn"),[1] have brought suit on his behalf against defendants Linn County, Iowa, Lumir Dostal, Jr., James Houser, Lu Barron, in their official capacities as members of the Linn County Board of Supervisors, (all will be collectively referred to as "Linn County"), and Discovery Living, Inc. ("Discovery Living") under Section 504 of the Rehabilitation Act of 1973 ("RA"), Title II (public services furnished by governmental entities) and Title III (public accommodations provided by private entities) of the Americans with Disabilities Act of 1990 ("ADA"), and IOWA CODE Chapter 216 of the Iowa Civil Rights Act of 1965 ("ICRA").

### A. The Parties

Mr. Hahn is a disabled fifty-five year old man who is under the legal guardianship of his sisters, Judith Barta ("Ms. Barta") and Barbara Axline ("Ms. Axline"). Linn County is a local government unit that operates Options of Linn County ("Options"), a sheltered workshop for persons with disabilities, through the Linn County Department of Human Resources Management. Mr. Dostal, Mr. Houser, and Mr. Barron are members of the Linn County Board of Supervisors, and they are sued in their official capacities. The Board of Supervisors is responsible for, *inter alia,* overseeing the operation of all programs, services and activities of the county, including Options, and for doing so in accordance with state and federal law. Discovery Living is a private, non-profit corporation that contracts with defendant Linn County to provide residential supports and services to persons with disabilities. Specifically, Discovery Living owns and manages community-based supported living homes for persons with disabilities.

### B. Factual Background

Mr. Hahn is diagnosed with cognitive delays and autism.[2] He resides in a Home and Community Based Services waiver home, which is similar to a group home, operated by Discovery Living. During the day, Mr. Hahn attends Options where he works with other people with disabilities in a supervised workshop. In August of 1993, the staff at Options introduced Mr. Hahn to Facilitated Communication ("FC"), and used FC with Mr. Hahn in his work setting. At that time, the staff at Discovery Living also began to use FC with Mr. Hahn in his group home setting. "FC is a technique by which a person, called a 'facilitator,' supports the hand or arm of a communicatively impaired individual, enabling the person to extend an index finger in order to point to or press the keys of a typing device and thus to communicate. It has been used primarily as a tool to communicate with people afflicted with autism, cerebral palsy and

---

1. Throughout this memorandum opinion, the court refers to the plaintiffs and Mr. Hahn interchangeably.

2. "Autism is a complex developmental disability that typically appears during the first three years of life. The result of a neurological disorder that affects the functioning of the brain, autism and its associated behaviors have been estimated to occur in as many as 1 in 500 individuals (Centers for Disease Control and Prevention 1997). Autism is four times more prevalent in boys than girls and knows no racial, ethnic, or social boundaries. Autism impacts the normal development of the brain in the areas of social interaction and communication skills. Children and adults with autism typically have difficulties in verbal and non-verbal communication, social interactions, and leisure or play activities. The disorder makes it hard for them to communicate with others and relate to the outside world." *See* <http://www.autism-society.org>.

Down's Syndrome, as well as others labeled 'intellectually or developmentally impaired.' The technique was apparently first introduced in the United States in 1989." *See* "Facilitated Communication," Autism Society of America (September 1993).

In the Fall of 1993, a decision was made by Linn County to cease using FC with its Options clients. Similarly, because Discovery Living contracts with Linn County, Discovery Living also ceased using FC with its clients. Linn County asserts that its decision to cease using FC was motivated by several factors, including the lack of research validating FC, the difficulty in finding assistance in developing protocols, as well as surfacing concerns over allegations of sexual abuse by means of FC. Linn County asserts that, for approximately one year, it continued to research FC and tried to develop and implement a policy that would allow it to resume using FC. Ultimately, however, Linn County never resumed using FC. Linn County's cessation of using FC generated numerous complaints raised by Mr. Hahn's legal guardians on his behalf. Mr. Hahn and his legal guardians repeatedly endeavored to persuade Linn County to resume using FC, because they believe that FC is the most effective mode of communication for Mr. Hahn. Mr. Hahn's sister, Ms. Barta, went so far as obtaining instruction in facilitation, and to this day, she continues to use FC with her brother when he visits her home. At the present time, however, Linn County and Discovery Living do not use FC to communicate with Mr. Hahn.

### C. Procedural Background

In 1997, Mr. Hahn, through his legal guardians, initiated a consumer dispute resolution process concerning Linn County's policy/practice of not providing FC. This was a three-step process involving review by the Dispute Resolution Officer, the Director of Options, and the Executive Director of the Department of Human Resources Management. Additional review was made by staff prior to the final decision by the Executive Director. An Appeal was heard by the Linn County Board of Supervisors resulting in a unanimous vote to deny Mr. Hahn's request that county personnel participate with him as FC facilitators or that FC be provided as a county-funded service. It was this decision that precipitated Mr. Hahn's legal guardians to file suit, challenging Linn County's policy/practice of not providing FC to Mr. Hahn, which is his preferred and allegedly most effective mode of communication, in the settings in which he lives and works. Mr. Hahn contends that the defendants' policy/practice regarding FC deprives him of his ability to engage in meaningful communication with the persons with whom he lives and works, thereby violating the RA, the ADA, and ICRA.

On August 11, 2000, Linn County filed a motion for summary judgment. In its motion, Linn County contends that even after taking all the reasonable inferences in a light most favorable to Mr. Hahn, he has failed to set forth specific facts sufficient to show that he has been denied any benefit offered by Linn County, that there is any documented expert opinion that FC is necessary for Mr. Hahn's meaningful access to benefits provided by Linn County, and that the denial to provide FC by Linn County is based solely on Mr. Hahn's disability. Specifically, Linn County asserts the following four reasons in support of its motion for summary judgment: (1) that the RA and the ADA cannot be invoked when the "benefit denied" (FC) is not part of the program or activity offered; (2) that Mr. Hahn cannot maintain a "meaningful access" argument without some showing that FC is required; (3) that the RA and the ADA cannot be invoked where there is no showing that the alleged discrimination occurred "solely on the basis of plaintiff's disability"; and (4) that Linn County's administration of its Mental Health and Developmental Disability ("MHDD") services complies with the implementing regulations of the ADA. Linn County further contends that upon dismissal of Mr. Hahn's federal claims, for the reasons stated above, this court should exercise its

discretion to entertain Mr. Hahn's state claim and grant summary judgment in its favor on that claim as well.

On August 14, 2000, Discovery Living filed its motion for summary judgment, contending that Mr. Hahn cannot establish a *prima facie* case for unlawful disability discrimination under the RA, the ADA, or ICRA. Specifically, Discovery Living asserts that Mr. Hahn cannot prevail on his disability discrimination claim because the undisputed facts do not support an inference that: (1) Discovery Living's refusal to provide professionally disapproved services to Mr. Hahn constitutes an adverse action based upon his disability; (2) Discovery Living's refusal to provide FC to Mr. Hahn constitutes a denial of equal access to services; (3) Discovery Living's refusal to provide scientifically-challenged FC services was a denial of reasonable accommodations; (4) Discovery Living's imposition of a literacy test imposed improper criteria; (5) Discovery Living's refusal to provide FC services was a denial of required auxiliary aids; and (6) Discovery Living's refusal to provide FC services was discrimination in violation of Iowa Code Chapter 216.

On September 12, 2000, plaintiffs filed a brief in support of their resistance to both summary judgment motions filed by Linn County and Discovery Living. In their resistance, plaintiffs contend that defendant Linn County discriminated against Mr. Hahn because it has not complied with its legal obligation under Title II of the ADA and Section 504 of the RA to provide an effective method of communication for him, and because it has not complied with its legal obligation under Title II of the ADA to modify its policy/practice of not providing FC. With respect to Discovery Living, plaintiffs contend that it discriminated against Mr. Hahn because Title III of the ADA prohibits Discovery Living from refusing to allow him to use FC. Specifically, plaintiffs assert that Discovery Living's requirement that Mr. Hahn pass a standardized literacy test before using FC violates Title III of the ADA, and that its refusal to modify its poli-

cy/practice of not providing FC violates Title III of the ADA, because it is obligated to provide effective communication for him. Plaintiffs further contend that both defendants' motions for summary judgment on the state law claims must also be denied. Thereafter, on September 21, 2000, only defendant Discovery Living filed a reply to plaintiffs' resistance.

On January 15, 2001, the court heard oral arguments on both Motions for Summary Judgment filed by defendants Linn County and Discovery Living. Plaintiffs were represented by Sondra B. Kaska, Iowa City, IA. Defendants Linn County, Iowa and Linn County Board of Supervisors were represented by Jeffrey L. Clark, Assistant County Attorney, Cedar Rapids, IA. Defendant Discovery Living was represented by Kelly R. Baier of Bradley and Riley P.C., Cedar Rapids, IA.

## II. LEGAL ANALYSIS

### A. Standards for Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R.CIV.P. 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997) *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir. 2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(b) & (c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). Therefore, a court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give the non-moving party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the

Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394. Furthermore, "[w]here the unresolved issues are primarily legal rather than factual"—as the parties assert is the case here—"summary judgment is particularly appropriate." *Arnold v. City of Columbia, Mo.*, 197 F.3d 1217, 1220 (8th Cir. 1999) (citing *Crain v. Board of Police Commissioners*, 920 F.2d 1402, 1405–06 (8th Cir.1990)); *Haberer v. Woodbury County*, 188 F.3d 957, 961 (8th Cir.1999) (also citing *Crain* ); *Cearley v. General Am. Transp. Corp.*, 186 F.3d 887, 889 (8th Cir.1999) (same).

### B. Federal Disability Claims

Linn County and Discovery Living move for summary judgment on Mr. Hahn's claims brought under both the RA and the ADA. Mr. Hahn has brought suit under two provisions of the ADA, and the RA. The first ADA provision is section 12132, or Title II, of the ADA, which provides:

Subject to the provisions of this subchapter [42 U.S.C. §§ 12131–12165], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. This provision applies to Mr. Hahn's claims against Linn County and not to his claims against Discovery Living. The second ADA provision is section 12182(a), or Title III, which applies to Mr. Hahn's claims against Discovery Living. This provision provides that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advan-

tages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The RA provision which applies to Mr. Hahn's claims against both Linn County and Discovery Living is 29 U.S.C. § 794(a), and it states that:

No otherwise qualified individual with a disability in the United States, ..., shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a). As will be discussed, because the ADA is modeled after Section 504 of the RA, the court will consider both statutes in tandem.

### 1. Title II claims against Linn County

The Eighth Circuit Court of Appeals has explained that claims under the RA and Title II of the ADA are closely related:

Title II of the ADA "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity." *Randolph v. Rodgers,* 170 F.3d 850, 857 (8th Cir. 1999). Similarly, § 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability ... shall ... be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (2000). We have held that the enforcement, remedies, and rights are the same under both Title II of the ADA and § 504 of the Rehabilitation Act. *See Hoekstra [v. Independent Sch. Dist. No. 283,]* 103 F.3d [624,] 626 [(8th Cir.1996)]. As an affirmative defense, a defendant may demonstrate that the requested accommodation would constitute an undue burden. *See Gorman,* 152 F.3d at 911.

*Birmingham v. Omaha Sch. Dist.,* 220 F.3d 850, 856 (8th Cir.2000); *Gorman v. Bartch,* 152 F.3d 907, 911–12 (8th Cir.1998) (describing the requirements of the two statutes and stating "[t]he ADA has no federal funding requirement, but it is otherwise similar in substance to the Rehabilitation Act, and 'cases interpreting either are applicable and interchangeable'") (quoting *Allison v. Department of Corrections,* 94 F.3d 494, 497 (8th Cir.1996)).

■ Additionally, the Eighth Circuit Court of Appeals has explained,

To state a prima facie claim under the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability. *See* 42 U.S.C. § 12131 *et seq.; see also Gorman [v. Bartch ],* 152 F.3d [907,] 911–12 [(8th Cir.1998)]; *Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995). The RA contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance. *See Gorman,* 152 F.3d at 911; *Thomlison v. City of Omaha,* 63 F.3d 786, 788 (8th Cir.1995).

*Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir.1999); *see also Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998) (analyzing claim under Title II of the ADA and explaining that "[t]o establish a violation of the Acts, [the plaintiff] must demonstrate: 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability."); *and compare Gorman,* 152 F.3d at 911 (RA case, citing 29 U.S.C. § 794(a) and *Layton* for a statement of the elements the plaintiff must prove "to prevail," adding to the second element that the plaintiff must prove that

the program or activity is that of a public entity "which receives federal funds").

■ Although Title II broadly prohibits discrimination on the basis of disability by public entities, *see* 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability ... be subjected to discrimination by any such entity"), it provides very little guidance by way of defining exactly what constitutes "discrimination" within the meaning of the statute. *Compare* 42 U.S.C. § 12112 (setting forth numerous definitions of disability discrimination in employment matters covered under Title I of the ADA); *accord Ferguson v. City of Phoenix*, 931 F.Supp. 688, 695 (D.Ariz.1996), *aff'd* 157 F.3d 668 (9th Cir. 1998) ("Unlike the other titles in this Act [the ADA], title II does not list all of the forms of discrimination that the title is intended to prohibit. Therefore the purpose of [section 204] is to direct the Attorney General to issue regulations setting forth the forms of discrimination prohibits.") (citing H.R.Rep. No. 485(III), 101st, Cong., 2d Sess., 52 (1990), U.S.Code Cong. & Admin.News 1990, p.445). To effectuate the statutory mandates of the ADA, the Department of Justice ("DOJ") promulgated regulations regarding the responsibilities of state and local governments to disabled persons. *See* 42 U.S.C. § 12134(a). As will be demonstrated below, therefore, the court will seek guidance from Title II's implementing regulations, which are entitled to substantial deference. *See Heather K. v. City of Mallard*, 946 F.Supp. 1373, 1385 n. 15 (N.D.Iowa 1996); *Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1307 n. 1 (10th Cir.1999); *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996) ("considerable weight"); *Helen L. v. DiDario*, 46 F.3d 325, 331 (3d Cir.1995) ("substantial deference"); *see also Olmstead v. L.C. by Zimring*, 527 U.S. 581, 598, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) ("the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance") (internal quotation marks and citations omitted).

In this case, the court notes that the first prong of the *prima facie* case is not in dispute—that Mr. Hahn is a qualified individual with a disability. Moreover, Linn County concedes that it is a public entity within the purview of Title II of the ADA, and that it receives federal financial assistance for purposes of the RA. At issue is whether Mr. Hahn, by reason of his disability, either was excluded from participation in or denied the benefits of services, programs, or activities whose essential eligibility requirements he met or was otherwise subjected to discrimination. Specifically, Linn County asserts the following four reasons in support of its motion for summary judgment: (1) that the RA and the ADA cannot be invoked when the "benefit denied" (FC) is not part of the program or activity offered; (2) that Mr. Hahn cannot maintain a "meaningful access" argument without some showing that FC is required; (3) that the RA and the ADA cannot be invoked where there is no showing that the alleged discrimination occurred "solely on the basis of plaintiff's disability"; and (4) that Linn County's administration of its Mental Health and Developmental Disability ("MHDD") services complies with the implementing regulations of the ADA. The court will address each of the reasons *seriatim*.

### a. Benefit denied

Linn County contends that because it does not provide FC to anyone, it could not have discriminated against Mr. Hahn by denying a benefit that it provides to no one. For this proposition, Linn County relies on *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir.1999) (rejecting ADA challenge based on New York City's failure to provide safety monitoring devices to a subset of individuals with disabilities because "the ADA requires only that a particular service provided to some not be denied to disabled people") and *Doe v. Pfrommer*, 148 F.3d 73 (2d Cir.1998) (rejecting RA claim by disabled individual who sought, *inter alia*, a "job coach," because "what [plaintiff] seeks to challenge is

not illegal discrimination against the disabled, but the substance of the services provided to him"). Therefore, Linn County argues that it is entitled to summary judgment on all counts alleging Mr. Hahn's exclusion from participation in or denial of benefits from its services, because there has been no showing by Mr. Hahn that FC, which Linn County alleges to be the benefit, is part of its services, programs or activities. In response, Mr. Hahn argues that while FC itself is not a "service, program, or activity" of Linn County, by denying him the use of this mode of communication, Linn County effectively denies him the benefits of its programs, services, and activities. Specifically, Mr. Hahn argues that "in order to ensure that the communication provided is as effective as that provided to other recipients of services, Linn County is mandated to provide auxiliary aids and services, such as FC, if that is what is necessary in order to provide Douglas Hahn equal opportunity to participate in and enjoy the benefits of the services provided." Plaintiffs' Brief at 17. In furtherance of his argument, Mr. Hahn relies on 28 C.F.R. § 35.160, *inter alia*, and asserts that because he is unable to effectively communicate with both staff and peers, he is excluded from participation in or denied the benefits of Linn County's services.

■ Initially, the court finds it necessary to clarify what appears to be a misunderstanding on the part of Linn County concerning the elements necessary for a plaintiff to set forth a *prima facie* claim under Title II of the ADA. Linn County asserts that the RA and the ADA cannot be invoked when the benefit denied is not part of the service, program, or activity offered, and because Mr. Hahn has not demonstrated that FC, which it alleges is the benefit, is part of its services, programs or activities, summary judgment should be entered on its behalf. This argument, however, is only partially true. The second element of a Title II claim requires that Mr. Hahn show that he was excluded from participation in or denied the benefits of Linn County's services, pro-

grams, or activities, *or was otherwise discriminated against. See Layton,* 143 F.3d at 472 (as the second element of a Title II claim, the plaintiff must show that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity). Therefore, even assuming *arguendo* that Mr. Hahn is unable to show that he was excluded from participation in or denied the benefits of Linn County's services, programs, or activities, his claim would not fail if he was able to show that he was "otherwise discriminated against." Here, the regulations form the underlying basis of Mr. Hahn's disability discrimination claims against Linn County. Specifically, Mr. Hahn alleges that Linn County's policy/practice ran afoul of, *inter alia,* 28 C.F.R. § 35.160, which concerns communications, and that violation of this regulation resulted in his being excluded from participation in or denied the benefits of Linn County's services.

■ As stated previously, Title II of the ADA directs the Attorney General to promulgate enforcement regulations. *See* 42 U.S.C. 12134(a). The regulations relevant to Mr. Hahn's disability discrimination claims are located in subtitle E of Title II of the ADA, entitled "Communications." 28 C.F.R. § 35.160(a) requires public entities to "take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a) (1997). In addition, the regulations require the public entity to "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of," the entity's program. 28 C.F.R. § 35.160(b)(1) (1997). "The public entity must provide an opportunity for individuals with disabilities to request the auxiliary aids and services of their choice" and must "honor the choice unless it can demonstrate that another ef-

fective means of communication exists or that use of the means chosen" would cause a fundamental alteration of the program or undue financial and administrative burdens. 28 C.F.R. Pt. 35, App. A at 487; *see* 28 C.F.R. § 35.164 (1997). Thus, "[d]eference to the request of the individual with a disability is desirable," but not absolutely required. 28 C.F.R. Pt. 35, App. A at 487; *see also Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1213 (D.C.Cir.1997) (stating, in dictum, that ADA regulations do not require public entity to honor individual's requested means of communication if another effective means of communication exists).

The court finds that communication is an integral component of ensuring that Mr. Hahn has an equal opportunity to participate in, and enjoy the benefits of Linn County's services and in particular the vocational services that it provides to Mr. Hahn. This is so because if the staff at Options is unable to discern Mr. Hahn's needs, wants and feelings through verbal communication, as is alleged and discussed in greater detail below, the staff will be unable to assist Mr. Hahn or engage in a meaningful, two-way conversation with him.[3] In a similar vein, Mr. Hahn will be unable to communicate and interact with his peers while attending this workshop. The record reveals that although Linn County no longer provides FC as an auxiliary aid to assist its clients with communication, it does provide other auxiliary aids. Indeed, the record reveals that fifty-three (53) of Linn County's clients use auxiliary aids to ensure that communication is effective. Some examples of the aids that Linn County provides to its clients include a sign board, macaw communication device, hearing aid, sign language, and communi-

cation book. Mr. Hahn contends that he cannot effectively communicate through verbal communication, but that he can effectively communicate through FC. In support of this contention, Mr. Hahn directs the court's attention to the September 13, 1993, Individual Comprehensive Plan ("ICP"), in which it states that "Doug has been using facilitated communications at Options. He has been successful and copies were given to the team," *see* ICP of 9/13/93 (cover page), and according to the Wendell Johnson Speech and Hearing Clinic Report of 10/3/95, "Mr. Hahn exhibits difficulty in communicating with those around him. His speech is understandable for the most part, but his perseverative and echolalic behaviors can make comprehension difficult on the part of the listener. Although facilitated communication has been reported to be helpful for Mr. Hahn, this method of improving communication with others in his environment is not an option due to agency policies." *See* Defendants Linn County, Iowa and Linn County Board of Supervisors Answers to Plaintiffs' First Set of Interrogatories, attached No. 7. Thus, the court finds that Mr. Hahn has generated a fact question as to what constitutes effective communication, and whether Linn County's policy/practice regarding FC results in him being excluded from participation in or denied the benefits of Linn County's services.

Additionally, the court does not find the cases cited by Linn County adverse to the relief sought by Mr. Hahn. In *Rodriguez,* the plaintiffs sought the addition of safety monitoring to New York's personal-car services package, asserting that they were effectively denied services because of their

---

**3.** The court finds Linn County's argument that, "there is not even a showing that verbal speech is required for him to have meaningful access to the MHDD services in which he participates," *see* Linn County's Brief at 7, unassailable in light of the stated purpose for the enactment of the ADA, to wit: Congress found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional

exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices...." 42 U.S.C. § 12101(a)(5). Indeed, the DOJ demonstrated the importance of ensuring effective communications for disabled individuals by carving out a subtitle in the regulations, *see* 28 C.F.R. § 35.160(a), to ensure such.

disability. In reversing the district court, the circuit explained:

> The ADA requires only that a particular service provided to some not be denied to disabled people. *See Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir.1998). As discussed above, the services that New York provides to the mentally disabled are not different than those provided to the physically disabled. Neither group is provided with independently tasked safety monitoring. Hence, what appellees are challenging "is not illegal discrimination against the disabled, but the substance of the services provided."

*Rodriguez*, 197 F.3d at 618 (citations omitted). Here, the court does not find that Mr. Hahn is making a substantive challenge to the benefits and services available to him. Also, the court does not understand that Mr. Hahn is challenging the adequacy of the benefits available to him; rather the court understands that Mr. Hahn is seeking equal and meaningful access to benefits already available to him. The record reveals that Linn County does provide vocational as well as other services to Mr. Hahn, and that many of Linn County's clients use auxiliary aids other than FC to assist them in communication. Thus, the court concludes that Mr. Hahn has, indeed, generated a fact question as to whether Linn County's policy/practice precludes disabled individuals, like himself, from communicating effectively which in turn precludes him from participating in or denies him the benefits of Linn County's services.

### b. Meaningful access

■ Linn County argues that Mr. Hahn has failed to provide any expert opinion that his use of FC would be more effective than his use of verbal speech, or that FC could be considered a bona fide auxiliary aid. Thus, absent any showing by Mr. Hahn that FC is necessary for him to have meaningful access to Linn County's services, and without any documented expert testimony to substantiate such an allegation, Linn County contends that it is entitled to summary judgment on all counts

alleging failure to provide meaningful access to its services, including provision of FC as an auxiliary aid. Mr. Hahn and his guardians, however, paint an entirely different picture than Linn County. Mr. Hahn contends that FC is more effective than his use of verbal speech, and that without FC, which he claims can qualify as an aid under the regulations, he is denied meaningful access to the services that Linn County provides to its other clients.

The court finds that there is a genuine issue of material fact as to whether Linn County's policy/practice has an adverse effect on disabled persons, like Mr. Hahn, who suffer from autism and mild cognitive delays and are unable to communicate their basic needs and wishes effectively through verbal communication, which in turn denies them meaningful access to its services. The record gives rise to reasonable inferences that, without FC, Mr. Hahn would have been unable to communicate information that was vital to his health, work, and emotions. For example, plaintiff alleges and Linn County does not refute that, through the use of FC it was discovered that Mr. Hahn was having difficulty breathing, which led to a diagnosis that he suffered from asthma; that Mr. Hahn was experiencing stomach pain, which led to the eventual diagnosis of an ulcer; and that Mr. Hahn was suffering tremendous grief and depression following his mother's death, which led to the prescription of medication for depression, as well as being placed on suicide precautions. Significantly, plaintiffs point out that Mr. Hahn was unable to communicate these vital matters through verbal communication, but was able to through FC. Also, in working with Mr. Hahn, Jean Madsen Beisler, a licensed speech and language pathologist in the state of Iowa, stated:

> My experience in working with Mr. Hahn demonstrates that he is able to effectively use Facilitated Communication. In particular, Mr. Hahn's use of Facilitated Communication is more effective than his use of verbal communi-

cation when communicating about work problems, health issues, and emotional issues. *See* Affidavit of Jean Madsen Beisler ¶ 10. Thus, contrary to Linn County's assertion that Mr. Hahn failed to provide any expert opinion that his use of FC would be more effective than his use of verbal communication, there is evidence in the record that FC is more effective than Mr. Hahn's use of verbal communication when communicating about work problems, health issues and emotional issues.

There is also evidence in the record that Mr. Hahn is unable to communicate with his peers in his work environment. Ms. Beisler states that "staff in neither setting mentioned Mr. Hahn speaking with his peers, roommates, or fellow employees, something that would be expected if Mr. Hahn were participating in effective communication services." *See* Affidavit of Jean Madsen Beisler ¶ 7. Furthermore, the record contains evidence that there have been several behavioral upsets reported in which the staff at Options were unable, through verbal communication, to discern what was disturbing Mr. Hahn. As a result, the staff requested that Mr. Hahn's sister use FC with him to discern what he was trying, albeit unsuccessfully, to communicate verbally. The court is hard pressed to understand why Linn County needs to contact Mr. Hahn's sister to request that she use FC in order to discern his verbal communication, if, in fact, he is able to effectively communicate verbally, as Linn County contends. Also, the court points out that if Mr. Hahn was able to communicate effectively why did Linn County feel the need to introduce FC to Mr. Hahn and use it with him in the first place? Based on the evidence in the record, the court finds that there is a genuine issue of material fact as to whether Linn County's policy/practice of not providing FC as an aid has an adverse effect on disabled persons, like Mr. Hahn, who suffer from autism and mild cognitive delays and are unable to communicate their basic needs and wishes effectively through verbal communication, which in turn denies them and Mr. Hahn meaningful access to its services.

Moreover, with respect to whether Mr. Hahn has presented evidence that FC could be considered a bona fide auxiliary aid under the regulations, the court points out that Mr. Hahn submitted the affidavit of Kent Johnson, a coordinator of the Great Plains Disability and Business Technical Assistance Center,[4] in which he states that although FC is not specifically listed within the definition of "auxiliary aids and services" under the regulations, FC could fall under the category of "other similar services and actions" that is part of the definition of "auxiliary aids and services" in 42 U.S.C. § 12102(1). *See* Affidavit of Kent Johnson ¶ 3a. Not only was this affidavit uncontroverted, but it is documented that Congress contemplated that the type of auxiliary aid or service necessary to ensure effective communication will vary with the length and complexity of the communication involved. *See* Department of Justice, commentary at 28 C.F.R. § 35.104, Pt. 35, App A (1993). Therefore, the court concludes that there are genuine issues of material fact concerning whether FC is a sufficiently effective means of communicating for Mr. Hahn, and whether FC could be considered an auxiliary aid under the regulations. Such issues should be left to the finder of fact.

### c. Discrimination "by reason of his disability"

■ Linn County also contends that Mr. Hahn cannot demonstrate that its policy/practice of not providing FC is based on Mr. Hahn's disability—the third element of his claim. *Layton,* 143 F.3d at 472 (elements of a claim pursuant to Title II of

---

4. The Great Plains Center provides services to the states of Missouri, Iowa, Kansas, and Nebraska. Specifically, it provides technical assistance, information, training and materials regarding the ADA, the RA, and other disability related laws and topics. *See* Affidavit of Kent Johnson ¶ 2.

the ADA); *Gorman,* 152 F.3d at 911 (elements of a claim pursuant to the RA). Linn County contends that the lack of scientific research validating FC, fiscal responsibility, and the desire to avoid potential liability are legitimate reasons for its policy/practice regarding FC. In response, Mr. Hahn claims that the reasons proffered by Linn County for its policy/practice regarding FC is disingenuous, and that he has generated a genuine issue of material fact as to whether he is being discriminated against by Linn County based on the severity of his disability.

■ The regulations under Title II of the ADA, which mirror those promulgated under the RA, in relevant part, provide:

> § 35.130 General prohibitions against discrimination. (b)(1) A public entity, in providing any aid, benefit, or service, may not....
>
> (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others, unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others.

28 C.F.R. § 35.130. These regulations promulgated under both the RA and the ADA clearly prohibit discrimination based upon severity of disability. *Messier v. Southbury Training School, et al.,* 916 F.Supp. 133, 141 (D.Conn.1996); *see also Cable, M.D. v. Dep't of Developmental Services of the State of California,* 973 F.Supp. 937, 942 (C.D.Cal.1997) (citing *Messier* and concluding that interpreting 28 C.F.R. § 130(b)(1)(iv) as prohibiting discrimination on the basis of the severity of a person's disability is an accurate interpretation of the ADA); *Helen L. v. DiDario,* 46 F.3d 325, 336 (3d Cir.), *cert. denied,* 516 U.S. 813, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995) ("[I]f Congress were only concerned with disparate treatment of the disabled as compared to their nondisabled counterparts," then the ADA's reference to the persistence of discrimination in institutionalization would constitute a "non sequitur"); *Plummer v. Branstad,* 731 F.2d 574, 578 (8th Cir.1984) (severity of handicap cannot be sole reason for denying Title XX funding); *Williams v. Wasserman,* 937 F.Supp. 524, 530 (D.Md.1996) (the ADA does oblige the defendants to make community-based treatment options available to otherwise qualified individuals without regard to the severity or particular classification of their disabilities); *Conner v. Branstad,* 839 F.Supp. 1346, 1356–57 (S.D.Iowa 1993) (question of material fact whether plaintiffs were excluded from community based programs solely by reason of the severity of their handicaps, and whether defendants could have made reasonable accommodation for plaintiffs' handicaps); *Martin v. Voinovich,* 840 F.Supp. 1175, 1191–92 (S.D.Ohio 1993) (both Section 504 and the ADA prohibit discrimination on the basis of severity of handicap); *Jackson v. Fort Stanton Hosp. & Training School,* 757 F.Supp. 1243, 1299 (D.N.M.1990) ("The severity of plaintiffs' handicaps is itself a handicap which, under § 504, cannot be the sole reason for denying plaintiffs access to community programs."), *rev'd on other grounds,* 964 F.2d 980 (10th Cir.1992); *Garrity v. Gallen,* 522 F.Supp. 171, 214–15 (D.N.H.1981) (discrimination based upon a generalized assumption concerning the abilities of a group of severely handicapped persons is actionable under Section 504); *Lynch v. Maher,* 507 F.Supp. 1268, 1278–79 n. 15 (D.Conn.1981) (discrimination on the basis of extent of handicap is actionable under Section 504).

Thus, under both the RA and the ADA, Linn County is prohibited from refusing to provide certain auxiliary aids to certain residents merely based upon the degree of their disabilities. The record reflects that Linn County serves persons with disabilities and that it provides communication services, other than FC, to its other clients. Earlier, the court concluded that there existed a question of fact as to whether Mr. Hahn can effectively communicate through the use of verbal communi-

cation. Mr. Hahn contends that there is no equally effective means of communication for him, and that Linn County has not offered him another effective means of communication. The court finds that, based on the fact that Linn County provides aid to some of its disabled clients, but not to Mr. Hahn, there is a question of material fact as to whether Linn County's policy/practice regarding FC discriminated against Mr. Hahn based on the severity of his disability.

With respect to Linn County's proffered reason for its refusal to provide FC because it lacks scientific validation, the court finds that this is subject to considerable dispute between the parties. Linn County asserts that over ten years after its introduction into the United States, FC remains a controversial method with little or no support in the traditional scientific community. Mr. Hahn, however, counters with written affidavits in which trained professionals indicate that, based on a number of studies, FC is a valid form of communication. Mr. Hahn points out that although there are organizations that question the validity of FC, there exist position statements propounded by nationwide organizations, such as The Autism National Committee, that support the use of FC, and that a number of states have developed guidelines for the use of FC with persons who have communication disabilities. Furthermore, Mr. Hahn contends that this reason asserted by Linn County is disingenuous because Linn County has previously implemented other techniques that lacked scientific validation. Mr. Hahn's sister, Ms. Barta, states:

> It appears to me that FC has been treated differently than all other techniques used with Doug. For example, despite the refusal to allow Doug to use Facilitated Communication because of an alleged lack of scientific validation, Options and Discovery Living staff were allowed to implement the Pat Wilbarger Sensory Integration Protocol for Pressure Brushing with Doug. There are no scientific studies validating the use of the Pat Wilbarger Protocol that I have

been able to locate through various contacts, even from the occupational therapist who introduced the protocol to staff.

*See* Affidavit of Judith Barta ¶ 15. Based on the foregoing, the court concludes that the evidence in the record gives rise to a question of fact regarding the scientific validity of FC. Moreover, because there are factual issues that may be reasonably resolved in favor of either party with respect to Linn County's other reasons for not providing FC, namely, fiscal responsibility and avoiding potential lawsuits, the court concludes that it is up to the trier of fact to weigh the evidence surrounding Linn County's policy/practice regarding FC. Accordingly, the court concludes that Linn County's motion for summary judgment on Mr. Hahn's claims against it under Title II of the ADA and the RA based on this reason is denied.

#### d. *"Reasonable modification"*

Assuming that the elements of a Title II cause of action can be shown in a particular case, and assuming that they have or can be shown in Mr. Hahn's case, when a public entity's policies, practices, or procedures discriminate against the disabled in violation of the ADA, a public entity is required to make "reasonable modifications." *Crowder v. Kitagawa* 81 F.3d 1480, 1485 (9th Cir.1996). The regulations promulgated pursuant to the ADA require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *Olmstead v. L.C. by Zimring,* 527 U.S. 581, 592, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). Similarly, with regard to communication aids, the regulations adopt a "fundamental alteration" exception and an "undue financial and administrative burdens" exception. 28 C.F.R. § 35.164. The public entity bears the burden of proving such alteration or

burdens "after considering all resources available for use in the funding and operation of the service, program, or activity." *Id.* This court notes that a plurality of the Supreme Court, in a Title II case involving the right of disabled individuals to community-based treatment, has interpreted section 35.130(b)(7) to permit more flexibility than its plain language might suggest. In *Olmstead,* the Court construed the "fundamental alteration" exception to "allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities." *Id.* at 604, 119 S.Ct. 2176. Although there is no strict test to determine whether an accommodation is reasonable, there are a few established guidelines. Whether an accommodation is reasonable "involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question." *Staron v. McDonald's Corp.,* 51 F.3d 353, 356 (2d. Cir.1995). "Reasonableness is not a constant." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 795 (1st Cir.1992). Therefore, the issue here is what is reasonable given the specific facts of Mr. Hahn's circumstances. The issue is not what would be reasonable in a general sense, but what would be reasonable given the individualized facts before the court. *Zukle v. Regents of the Univ. of California,* 166 F.3d 1041, 1048 (9th Cir.1999).

Linn County asserts that the use of FC would fundamentally alter the nature of the services it provides and/or result in an undue burden. Specifically, Linn County states that:

Mr. Hahn's present situation would indicate that for him to engage in facilitated communication requires the presence and assistance of a facilitator. The issue is not allowing Mr. Hahn to 'use FC,' as he uses FC with his sister as facilitator. If Linn County employees were to be used, training, screening and evaluation criteria would need to be developed and would involve obtaining the services of a speech/language professional to oversee training, screening of consumers and evaluation of the facilitation process. A facilitator would need to be offered to all persons receiving MHDD services. In addition, (1) Staff would have to be trained in a procedure that is not accepted as valid. (2) Time would have to be taken away from productive activity to engage in an activity that has no proven merit and might even be harmful to the client. (3) Miscommunication could result in and cause harm to the client and/or the agency, as in a false abuse claim.

*See* Defendants Linn County, Iowa and Linn County Board of Supervisors Answers to Plaintiffs' First Set of Interrogatories, No. 4. In response, Mr. Hahn argues that Options already has five staff employees who have some training in FC, and that, therefore, it has staff who have had at least some training in the methodology of FC. Mr. Hahn concedes that additional training would be required, however, he asserts that ongoing training is central to providing quality services. Furthermore, Mr. Hahn asserts that Linn County already owns computers and that he uses his own word processor to facilitate, which eliminates the notion that Linn County would incur any large expense. Therefore, Mr. Hahn argues that the fundamental nature of the services provided by Linn County would not be altered by allowing him to use FC nor would allowing the use of FC impose an undue burden on Linn County.

The court notes that the reasonableness of proposed modifications is generally a fact question not amenable to summary determination. *See Heather K,* 946 F.Supp. at 1389 (citations omitted). Based on the evidence in the record, the court finds that a fact question exists as to whether modifying Linn County's policy/practice of not providing FC would cause either a fundamental alteration to services it provides or an undue financial and administrative burden.

### e. Significance of complying with MHDD

██ Linn County argues that because it has a county plan that has received state payment by the State of Iowa, pursuant to Iowa Code § 331.439(1)(b) and (d), it must be in compliance with the ADA and the RA. Linn County further argues that having failed to establish that any portion of the County Management Plan is discriminatory, Mr. Hahn cannot maintain an allegation that Linn County needs to make reasonable modifications as required under the implementing regulations. Linn County avers that it would accommodate any non-county funded provision of FC to Mr. Hahn. Thus, Linn County argues that they are entitled to summary judgment on all counts alleging that its administration of its Mental Health and Developmental Disability ("MHDD") services is in violation of any implementing regulations. In response, Mr. Hahn argues that the County Management Plan is wholly irrelevant to the disability discrimination claims he has asserted under the ADA and the RA. He states that there is no reference to the ADA, the RA or ICRA in Iowa Code § 331.439(1)(b) and (d), thus, whether or not the County Management Plan is in compliance with these sections of the Iowa Code is irrelevant to whether the ADA, the RA or ICRA have been violated.

The court finds that, because Linn County's plan complies with Iowa Code § 331.439(1)(b) and (d), is not dispositive as to whether a violation of the ADA, the RA, or ICRA has occurred. Additionally, the court finds Linn County's contention that it cannot provide FC because FC is not a service funded under Medicaid to be subject to dispute. Mr. Hahn submitted the affidavit of Linda Hinton, who is the administrator of the MHDD Division of the State of Iowa Department of Human Services, in which she states that "[s]ervices for persons with disabilities can be paid for from a variety of sources. Neither state funding nor Medicaid funds are the exclusive source of payment for these services. Other sources of funding for MHDD services include but are not limited to: vocational rehabilitation; special education; block grant funds; and general operating funds." See Affidavit of Linda Hinton ¶ 5. Based on the foregoing, the court concludes that the limitations imposed by focusing on Medicaid and MHDD funding sources are those imposed by Linn County, and not the mandates of the applicable laws. Thus, Linn County is not entitled to judgment as a matter of law on this claim.

### 2. Title III claims against Discovery Living

██ Title III of the ADA prohibits any person who owns, leases, or operates a place of public accommodation from discriminating against an individual on the basis of that individual's disability. See 42 U.S.C. § 12182(a) (1994); Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir.2000) ("Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities."). As the Eighth Circuit Court of Appeals has explained,

A person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation. See 42 U.S.C. § 12182(a) and (b)(2)(A)(ii).

Amir v. St. Louis Univ., 184 F.3d 1017, 1027 (8th Cir.1999).[5] Additionally, analysis

---

**5.** The Eighth Circuit explained that claims under the RA are analyzed in a manner similar to ADA claims except that the RA imposes a requirement that a person's disability serve as the sole impetus for a defendant's adverse action against the plaintiff. Amir, 184 F.3d at

under Title III of the ADA and the RA are "similar in substance" and, with the exception of the RA's federal funding requirement, "cases interpreting either are applicable and interchangeable." *Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir.1999) (citations omitted); *see also Menkowitz v. Pottstown Memorial Medical Ctr.,* 154 F.3d 113, 120 (3d Cir.1998) (explaining that claims under the RA and Title III of the ADA are analyzed similarly). Under Title III of the ADA, for purposes here, the relevant definition of "discrimination" encompasses the three following concepts:

(i) The imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges advantages, or accommodation being offered.

(ii) a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden

42 U.S.C. § 12182(b)(2)(A)(i)–(iii).

In this case, there is no dispute that Mr. Hahn is disabled within the meaning of the ADA or the RA. Similarly, there is no dispute that, for purposes of the RA, Discovery Living is a program receiving federal financial assistance and that, for purposes of the ADA, Discovery Living is a private entity providing public accommodations. Thus, at issue is whether Discovery Living took adverse action against Mr. Hahn that was based upon his disability, and whether Discovery Living failed to make reasonable modifications that would accommodate Mr. Hahn's disability without fundamentally altering the nature of the public accommodation. The regulations mentioned above provide the underlying basis for Mr. Hahn's disability discrimination claims against Discovery Living. The court will address each in turn, however, the court must first address Discovery Living's assertion that since it is a facility providing accommodations only to the disabled, Mr. Hahn cannot demonstrate that he suffered from disparate treatment compared to the nondisabled, as is required under Title III of the ADA.

■ The Supreme Court recently, and emphatically, rejected this assertion raised by Discovery Living in *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). Specifically, the majority in Olmstead rejected the dissent's "notion that 'this Court has never endorsed an interpretation of the term "discrimination" that encompassed disparate treatment among members of the same protected class,' post, at 2194 (opinion of Thomas, J.), that '[o]ur decisions construing various statutory prohibitions against "discrimination" have not wavered from this path,' post, at 2194–2195, and that 'a plaintiff cannot prove "discrimination" by

1029 n. 5 (citations omitted). On the summary judgment record before the court, as will be demonstrated, "the heightened requirements" contained in the RA do not preclude Mr. Hahn's recovery on this cause of action. *Id.*

demonstrating that one member of a particular protected group has been favored over another member of that same group,' post, at 2195–2196." *Olmstead,* 527 U.S. at 598 n. 10, 119 S.Ct. 2176. The majority stated that this contention was "incorrect as a matter of precedent and logic," and cited cases establishing the contrary proposition that discrimination is still actionable, even if it is only between members of a protected class. *Id.* Thus, Mr. Hahn can set forth a claim of discrimination even if it is only between members of his protected class, namely, the disabled. *See Cable,* 973 F.Supp. at 942 ("To conclude discrimination between the disabled and non-disabled is prohibited by the ADA, yet discrimination among disabled individuals is not, would conflict with the purposes of the ADA."). The court will now address the arguments raised by Discovery Living in support of its motion for summary judgment.

### a. Eligibility criteria

■ Discovery Living contends that it would be unreasonable for Discovery Living to provide FC services to Mr. Hahn without some measure of his ability to read and write. Discovery Living states that it went to great lengths, over a significant period of time, with the full input and participation of Mr. Hahn's guardians, to develop a specific, individualized assessment of Mr. Hahn's ability to read. Unexpectedly, however, Mr. Hahn's sister notified Discovery Living that Mr. Hahn would not take the reading assessment test. Discovery Living states that had Mr. Hahn taken the reading assessment, which it argues is not a traditional standardized test, and been successful, Discovery Living was prepared to train staff in FC with Mr. Hahn. However, because Mr. Hahn did not take the reading assessment test, Discovery Living argues that it would be unreasonable for it to provide FC services to Mr. Hahn without some measure of his ability to read and write.

In response, Mr. Hahn argues that if he could utilize the traditional standardized tests for accurately assessing his literacy level, he would not need FC to communicate. Thus, Mr. Hahn contends that Discovery Living's prerequisite that he pass a literacy test before it allows its staff to use FC to communicate with him violates Title III of the ADA. He buttresses his argument on statements contained in the affidavit of Dr. Douglas Biklen, the individual who was responsible for bringing the methodology of FC to the United States in 1990 and who is foremost in the area of FC, in which he states:

> Although it is necessary to read and spell to convey a message by typing on a keyboard, a person's literacy abilities cannot be discerned unless and until that person has a means of expression provided that is effective for him or her. Therefore, traditional standardized testing of literacy skills by users of FC prior to their developing reliable pointing and communication skills is likely to be misleading and pointless.

*See* Affidavit of Douglas Biklen ¶ 4.

Eligibility criteria that "screen out" or "tend to screen out" disabled individuals violate the ADA unless the proponent of the eligibility criteria can show that the eligibility requirements are necessary. 42 U.S.C. § 12182(b)(2)(A)(i); *Bowers v. NCAA,* 118 F.Supp.2d 494, 518 (D.N.J. 2000); *Guckenberger v. Boston Univ.,* 974 F.Supp. 106, 134 (D.Mass.1997). The "screen out" concept "makes it discriminatory to impose policies or criteria that, while not creating a direct bar to individuals with disabilities, diminish an individual's chances of such participation." *Guckenberger,* 974 F.Supp. at 134 (quoting *Doukas v. Metropolitan Life Ins. Co.,* 950 F.Supp. 422, 426 (D.N.H.1996)).

Based on the foregoing, the court finds that there is a material fact question as to whether Discovery Living's prerequisite that Mr. Hahn take a literacy test before they allow its staff to use FC to communicate with him "screens out" or "tends to screen out" disabled individuals, such as Mr. Hahn, in violation of Title III of the ADA. This is so because the burden of

establishing whether an eligibility requirement "screens out" or "tends to screen out" individuals with disabilities must be borne by Mr. Hahn, however, on a motion for summary judgment, it is the burden of the moving party, Discovery Living, to establish that its literacy test does not "screen out" or "tend to screen out" disabled individuals as a matter of law. Even though Discovery Living sets forth a tenable reason in support of its contention that a specific literacy test is necessary before allowing its staff to use FC to communicate with Mr. Hahn, its failure to demonstrate that the testing requirement does not "screen out" or "tend to screen out" disabled individuals, such as Mr. Hahn, coupled with Douglas Biklen's affidavit, prevent the court from granting Discovery Living's motion for summary judgment on this claim.

### b. Reasonable modification

■ Discovery Living has moved for summary judgment on the basis that the undisputed facts cannot support a reasonable inference that the requested accommodation is necessary for Mr. Hahn to participate in services provided by Discovery Living, and that the requested accommodation would require a fundamental alteration in its residential care services. In response, Mr. Hahn argues that Discovery Living must modify its policy/practice that does not provide FC, because without FC, Mr. Hahn contends that he is unable to effectively communicate. Mr. Hahn states that modifying the policy/practice would not fundamentally alter the services that Discovery Living provides or result in an undue burden. Mr. Hahn asserts that Discovery Living serves persons with disabilities and provides a full range of services, including communication, to their clients according to the specific needs of the client. For example, Mr. Hahn points out that there are four clients of Discovery Living who have been provided with, and who use, the following auxiliary aids to assist with communication: Memo Mates; Dyna Vox; picture prompts; and Message Mate. Significantly, moreover, Discovery

Living indicated that "[a]ll consumers expressed their opinion regarding these communication aids, either through words, or their behavior. *In all cases, the preference expressed by the consumer was honored.*" *See* Discovery Living, Inc.'s Responses to Plaintiffs' Interrogatories, No. 5. Notwithstanding, in response to an interrogatory asking how allowing Mr. Hahn to use FC would fundamentally alter the services provided or cause an undue burden, Discovery Living stated that if the requests made through FC turn out not to be authored by Mr. Hahn, then the time spent producing them is an undue burden. *See* Discovery Living, Inc.'s Responses to Plaintiffs' Interrogatories, No. 4.

■ The ADA requires a provider of a public accommodation to modify its program to accommodate the needs of a disabled person unless such a modification will substantially alter the nature of the program or such a modification constitutes an undue burden. *See Amir v. St. Louis Univ.*, 184 F.3d 1017, 1028 (8th Cir.1999) (citing *Roberts v. KinderCare Learning Ctrs., Inc.*, 86 F.3d 844, 846 (8th Cir.1996)). It is a plaintiff's burden to establish that such a reasonable modification exists. *Walton v. Mental Health Ass'n. of Southeastern Pa.*, 168 F.3d 661, 670 (3d Cir. 1999). If such a reasonable modification exists, a defendant has the opportunity to show that the modification would fundamentally alter the requirement at issue. *Id.* If a defendant is successful in proving that fundamental alteration would take place, then the ADA does not demand implementation of that modification. *Id.*

Based on the evidence in the record, the court cannot say as a matter of law that provision of FC would have imposed an undue burden on Discovery Living. The regulations set out criteria for determining whether a proposed accommodation imposes an undue burden within the meaning of § 36.303(a). Section 36.104 provides, in pertinent part:

In determining whether an action would result in an undue burden, factors to be

considered include—(1) The nature and cost of the action needed under this part; (2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation ...; or the impact otherwise of the action upon the operation of the site; (3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity; (4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and (5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

§ 36.104 (1993). The question whether provision of FC services on some basis would pose an undue burden on Discovery Living raises a genuine issue of material fact. Also, in light of the fact that Discovery Living already provides auxiliary aids to its clients and provides these aids based on the client's choice, the court finds that there similarly exists a disputed genuine issue of material fact as to whether Mr. Hahn's requested accommodation would require a fundamental alteration in Discovery Living's residential care services. The court has already stated in the analysis for Linn County that there exists a genuine issue of material fact as to whether FC is necessary for Mr. Hahn to participate in services provided by Linn County. The analysis for Linn County is equally true with respect to Discovery Living here. Therefore, Discovery Living is not entitled to summary judgment on this claim

### c. Auxiliary aids

■ Discovery Living also contends that it is entitled to judgment as a matter of law on this claim because the undisput-

ed facts cannot support a reasonable inference that FC is an "appropriate" aid, or that FC is an aid "necessary to ensure effective communication." Mr. Hahn, however, argues that under Title III, Discovery Living must provide appropriate auxiliary aids and services where needed to ensure effective communication with persons with disabilities. Mr. Hahn acknowledges that Discovery Living is not required to provide the most advanced or sophisticated technology, but he asserts that effective communication must be ensured. Mr. Hahn argues that verbal language is not as effective for him as the use of FC, and because Discovery Living has failed to provide any alternative method of communication that is as effective for him as FC, Discovery Living violates Title III of the ADA.

The regulations implementing the ADA provide that a "public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c) (1993). This requirement is tempered by the general qualification that a public accommodation may treat disabled individuals in need of auxiliary aids and services differently from other individuals if "the public accommodation can demonstrate that [ensuring equality of treatment] would ... result in an undue burden, i.e. significant difficulty or expense." § 36.303(a) (1993). Thus, "the ADA places an affirmative duty on owners and operators of places of public accommodation to make reasonable accommodations and to take steps to ensure that disabled persons have equal access to the goods and services such places offer." *Walker v. Carnival Cruise Lines,* 63 F.Supp.2d 1083, 1092 (N.D.Cal.1999).

The court finds that the evidence in the record gives rise to a genuine issue of material fact as to whether FC is an appropriate aid and whether FC is an aid necessary to ensure effective communication. As the court indicated previously, Mr. Hahn submitted the uncontroverted

affidavit of Kent Johnson[6] in which he stated that FC, while not specifically listed within the definitions of "auxiliary aids and services" could fall under the category of "other similar services and actions" that is part of the definition of "auxiliary aids and services" in 42 U.S.C. § 12102(1). Moreover, Discovery Living's reason for not providing FC, that it is not a scientifically valid technique for communication, is subject to considerable dispute by Mr. Hahn. Indeed, Mr. Hahn submitted affidavits in which FC has been indicated as a valid form of communication based on a number of studies. Additionally, as the court indicated earlier, he points out that although there are organizations that question the validity of FC, there exist position statements propounded by nation-wide organizations, such as The Autism National Committee, that support the use of FC, and that a number of states have developed guidelines for the use of FC with persons who have communication disabilities. Therefore, based on the foregoing, the court concludes that the evidence in the record gives rise to a question of fact regarding the validity of FC. Accordingly, Discovery Living is not entitled to judgment as a matter of law on this claim.

Moreover, with respect to Discovery Living's claim that Mr. Hahn does not need FC to ensure effective communication, the court also finds that this is a material factual issue in dispute. Although Discovery Living states that "[i]t is undisputed that the Plaintiff can speak and communicate to Discovery Living staff and house-mates," *see* Discovery Living's Brief at 17, the court finds that this issue is hotly disputed between the parties particularly since it is alleged by plaintiffs and not disputed by Discovery Living that only through FC was the following vital information discovered: that Mr. Hahn has asthma; that he was severely depressed and needed to be placed not only on medication, but on suicide precautions after his

mother died; and that he had an ulcer. Additionally, Mr. Hahn's sister stated that:

> On a number of occasions, staff at Discovery Living and at Options have contacted me to request that I facilitate with Doug because they could not determine what he was trying to communicate or what his problem was through any other method of communication. The situations about which they requested that I facilitate with Doug include such things as: Dough hitting others, throwing objects, yelling, general grumpiness at work, wandering around at work, Doug crying when he heard a certain song, and Doug throwing away pictures of family members. Staff have frequently expressed an interest in knowing what Doug types when we facilitate.

Affidavit of Judith Barta ¶ 9. Thus, the court finds that whether FC is needed to ensure effective communication presents a question of fact.

### d. Equal access to services

Discovery Living also contends that it is entitled to judgment as a matter of law on Mr. Hahn's claim that its refusal to allow its staff to use FC to communicate with him constitutes a denial of equal access to services based on 42 U.S.C. § 12182(b)(1)(A)(i) and 42 U.S.C. § 12182(b)(1)(A)(ii), because it has not excluded Mr. Hahn from participation in any program or services that it offers to other Discovery Living residents. Moreover, Discovery Living contends that Mr. Hahn is not trying to gain access to services and programs, but is trying to change the substantive nature of the services that Discovery Living provides. In support of these contentions, Discovery Living cites several of the same cases as Linn County, primarily *Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir.1999) and *Doe v. Pfrommer*, 148 F.3d 73 (2d Cir.1998), and further contends that it is undisputed that Mr.

---

6. Mr. Johnson is part of the Great Plains Services, which provides technical assistance, information, training and materials regarding the ADA, the RA and other disability related law topics.

Hahn is able to communicate with the Discovery Living staff and house-mates.

As the court concluded earlier, whether Mr. Hahn is able to communicate effectively with the Discovery Living staff and house-mates generates a genuine issue of material fact. Indeed, there is evidence in the record to support Mr. Hahn's contention that FC may be necessary for him to ensure equal access to Discovery Living's programs or services. As far as Discovery Living's argument that Mr. Hahn is trying to change the fundamental nature of the services provided by it, the court finds this argument untenable primarily because one of the services Discovery Living provides to its clients is communication. Indeed, four of its clients are currently using other types of auxiliary aids, and significantly, their choice of aid was honored by Discovery Living. Thus, the court disagrees that Mr. Hahn is trying to change the fundamental nature of the services Discovery Living provides; rather, Mr. Hahn is seeking equal and meaningful access to services that are already available to him. In so doing, Discovery Living is not entitled to summary judgment on this claim.

### 3. Relationship between Linn County and Discovery Living

Mr. Hahn asserts that if a local government entity, such as Linn County, contracts with a private entity, such as Discovery Living, to provide services, Linn County must ensure that Discovery Living is operating in a way that meets the requirements of Linn County's Title II obligations pursuant to 28 C.F.R. § 35.130(b)(1)(v).

Indeed, pursuant to statutory mandate, the Department of Justice promulgated, in addition to the regulations, an aid in understanding the rights and obligations created by the ADA and its attendant regulations entitled "Title II Technical Assistance Manual" ("Manual"). *See* 42 U.S.C. § 12206(c)(3). Part II—1.3000, entitled "Relationship to title III," explains that in many situations, public entities have a close relationship to private entities that are covered by Title III, with the result that certain activities may be at least indirectly affected by both titles. Relevant to the circumstances present in this case is Illustration 4, which provides:

> A private, nonprofit corporation operates a number of group homes under contract with a State agency for the benefit of individuals with mental disabilities. These particular homes provide a significant enough level of social services to be considered places of public accommodation under Title III. The State agency must ensure that its contracts are carried out in accordance with Title II, and the private entity must ensure that the homes comply with Title III.

*Id.* Based on the foregoing illustration, and the contractual relationship that exists between Linn County and Discovery Living, the court concludes that there is a genuine issue of material fact as to whether Linn County has ensured that its contract with Discovery Living is carried out in accordance with Title II, and whether Discovery Living has ensured that its residential home complies with Title III.

### C. State Disability Claims

 Mr. Hahn's state law claim is brought under the Iowa Civil Rights Act of 1965 ("ICRA"), IOWA CODE § 216.7(1)(a), which provides:

> 1. It shall be an unfair or discriminatory practice for any owner, lessee, sublessee, proprietor, manager, or superintendent of any public accommodation or any agent or employee thereof:
>
> a. to refuse or deny to any person because of race, creed, color, sex, national origin, religion or disability the accommodations, advantages, facilities, services, or privileges thereof, or otherwise to discriminate against any person because of race, creed, color, sex, national origin, religion or disability in the furnishing of such accommodations, advantages, facilities, services, or privileges.

*Id.* Mr. Hahn alleges that the refusal of Linn County and Discovery Living to use FC violates the protections afforded to him under ICRA.

Iowa courts look to the ADA, its regulatory interpretations, and its caselaw in construing a disability claim under ICRA. *Walsted v. Woodbury County,* 113 F.Supp.2d 1318, 1342 (N.D.Iowa 2000) (citing *Fuller v. Iowa Dep't of Human Services,* 576 N.W.2d 324, 329 (Iowa 1998)); *accord Wheaton v. Ogden Newspapers, Inc.,* 66 F.Supp.2d 1053, 1067 n. 2 (N.D.Iowa 1999) (same). Thus, the foregoing analysis under the ADA, also applies to Mr. Hahn's ICRA claim. Accordingly, because the court finds that Mr. Hahn has generated a genuine issue of material fact under both the RA and the ADA, the court denies defendants' motions for summary judgment on Mr. Hahn's claim of disability discrimination under Iowa Code Chapter 216.

### III. CONCLUSION

Based on its review of the summary judgment record as a whole, the court concludes that Mr. Hahn has generated material fact questions regarding his RA and ADA claims against both Linn County and Discovery Living. Therefore, the court denies defendant Linn County's motion for summary judgment on Mr. Hahn's federal disability discrimination claims under the RA and Title II of the ADA. The court also denies defendant Discovery Living's motion for summary judgment on Mr. Hahn's federal disability discrimination claims under the RA and Title III of the ADA. Additionally, the court concludes that Mr. Hahn has generated genuine issues of material fact regarding his state disability discrimination claims under the Iowa Civil Rights Act. Therefore, the court denies both motions for summary judgment raised by defendant Linn County and defendant Discovery Living on Mr. Hahn's state disability discrimination claims under Iowa Code Chapter 216.

**IT IS SO ORDERED.**